# 22-1812

United States Court of Appeals
for the
Second Circuit

BUZZFEED, INC.,

*Plaintiff-Appellant,*

-v.-

UNITED STATES DEPARTMENT OF JUSTICE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## APPELLANT'S REPLY BRIEF

Matthew Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
matt@loevy.com

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I. ARGUMENT ..........................................................................................1

   A. DOJ has not shown that releasing the name of the harasser would allow victims or witnesses to be identified....................................2

   B. There is a significant public interest in knowing the identity of government wrongdoers...........................................................3

   C. It is not an unwarranted invasion of personal privacy to disclose the name of a high-level official found by an inspector general to have sexually harassed multiple women in violation of department policies....................................................................................6

   D. No *Perlman* factor supports withholding .......................................9

      1. The government employee's rank is high ...............................9

      2. The degree of wrongdoing and strength of evidence against the employee are both high .........................................................10

      3. There is no other way to obtain the information................................11

      4. The information sheds light on a government activity, is related to job function, and is not of a personal nature...................................11

   E. The case should not be remanded for an Exemption 6 analysis .............13

II. CONCLUSION ...................................................................................14

   CERTIFICATE OF COMPLIANCE ................................................................15

   CERTIFICATE OF SERVICE .......................................................................16

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Am. Immigr. Lawyers Ass'n v. Executive Office for Immigration Review*,
830 F.3d 667 (D.C. Cir. 2016) .................................................................... 8, 12

*Associated Press v. Department of Defense*, 554 F.3d 274 (2d Cir. 2009) ............... 5

*Beck v. DOJ*, 997 F.2d 1489 (D.C. Cir. 1993) ....................................................... 7, 8

*Behar v. DHS*, 39 F.4th 81 (2d Cir. 2022) ................................................................. 5

*BuzzFeed, Inc. v. DOJ*, No. 17 Civ. 7949 (VSB), 2019 WL 13084378
(S.D.N.Y. May 8, 2019) ...................................................................................... 10

*Cochran v. United States,* 770 F.2d 949 (11th Cir. 1985) ...................................... 4, 7

*Columbia Packing Co. v. U.S. Dep't of Agric.*, 563 F.2d 495 (1st Cir. 1977) .......... 4

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ............................................................ 3

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81 (2d Cir. 1991) ............. 5

*Perlman v. DOJ*, 312 F.3d 100 (2d Cir. 2002) ....................................... 9, 10, 11, 13

*Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015) ............................. 4

*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984) ..................................................... 4, 7, 10

*Wood v. FBI*, 432 F.3d 78 (2d Cir. 2005) ................................................................ 12

**Statutes**

5 U.S.C. § 552(b)(7)(C) ............................................................................................ 6

*Other Authorities*

Anna Brown, Pew Research Center, More Than Twice as Many Americans Support Than Oppose the #MeToo Movement (Sept. 29, 2022) ..............................8

Lee J. Lofthus, U.S. Dep't of Justice, Memo. for Heads of Dep't Components Re: Sexual Harassment and Sexual Misconduct (April 30, 2018) ...........................5

Rod J. Rosenstein, U.S. Dep't of Justice, Memo. for Heads of Dep't Components Re: Sexual Harassment and Sexual Misconduct (April 30, 2018).......8

I. ARGUMENT

DOJ continues to defend the privacy interests of a DOJ executive who kissed a subordinate on the lips at work without her consent; referenced a subordinate's gender in an interview while questioning whether she would be capable of serving in a promotion; commented (twice) to a subordinate, as he shut the door to her office, about how "her body shape looked in the outfit she was wearing," and (a third time) how, as a "long hair type of guy," he "really like[s] women with long hair"; and engaged in other violations of DOJ policy that no government official could possibly have thought appropriate. JA-019, 023, 031-33; *see generally* JA-019-33. In shielding the harasser, DOJ asserts that this misconduct is not sufficiently serious under *Perlman*, and ignores the well-recognized public interest in accountability and deterrence that comes from disclosure of the name of a government wrongdoer.

This Court should hold that it is not an unwarranted invasion of personal privacy under Exemption 7(C) to release the name of a senior official found by an inspector general to have violated department sexual harassment policies in the workplace. DOJ has failed to establish that any victims or witnesses could be identified, courts have found sufficient public interest outweighing the privacy interests of high-level government wrongdoers in comparable circumstances, and no *Perlman* factor supports DOJ's position.

1

### A. DOJ has not shown that releasing the name of the harasser would allow victims or witnesses to be identified.

BuzzFeed agrees that victims and witnesses of sexual harassment have significant privacy interests. *See* Appellee Br. at 14-15. But BuzzFeed has not challenged DOJ's redactions of their names, and DOJ has not shown that disclosing the name of the harasser would nonetheless lead to the identification of victims or witnesses.

To support its indirect identification claim, DOJ relies on the passage of its declaration asserting that because the "some of the other individuals were co-workers," identifying the harasser "would likely allow a member of the public to determine the DOJ component, particular office, and timeframe at issue," which "could lead to identification" of witnesses and victims. Appellee Br. at 14-15 (citing JA-052,[1] cleaned up). That is the extent of its evidence: DOJ does not point to any

---

[1] DOJ cites only to the full page 52 of the Joint Appendix. Appellant Br. at 14-15. Based on the subject matter, it appears that the passage on which DOJ relies is taken from paragraph 13 of the declaration, and states in full relevant part: "Specifically, some of the other individuals were co-workers of the subject and revealing his identity would likely allow a member of the public to determine the Department component, office of the Executive Officer, and timeframe at issue, which could lead to identification of the third parties. Thus, the privacy interests of those other individuals are intertwined with the identity of the former Executive Officer, and identifying him would increase the likelihood that third parties could be identified, thereby undermining those individuals' privacy interests." JA-052. The remainder of the paragraph (including an earlier portion contained in uncited page JA-051) either provides general context setting up the issue or explains why it would be an invasion of victim and witness privacy to identify them, which does not address the threshold question of whether any victims or witnesses actually could be identified.

2

facts in the Report from which the victims or witnesses could be identified even by co-workers if the office is known, and there could be dozens of women or more who interacted with the harasser as the senior most person in the office—DOJ does not even tell us the size of the office or the length of his tenure. *See* Appellee Br. at 14-15; JA-051-52 (¶ 13). Thus, the declaration is not "fact specific," and permits neither "appellant to contest the affidavit in adversarial fashion" nor "a reviewing court to engage in effective *de novo* review." *Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999). As a result, this appeal turns only on the privacy interests of a DOJ executive found by the Inspector General to have sexually harassed multiple women, not victims or witnesses.

> **B. There is a significant public interest in knowing the identity of government wrongdoers.**

DOJ claims that because the details of the harassment and Inspector General investigation are known, there is "no significant public interest" in knowing the name of the offending official, and argues that the Court need not even address the *Perlman* factors. Appellee Br. at 17-19. The Court should reject DOJ's improperly narrow view of public interest under Exemption 7(C), and hold, consistent with the decisions of this Court and other Circuits about the names of government wrongdoers, that there is a public interest in the names of government officials found to have violated department sexual harassment policies, even when the details of their wrongdoing and any investigation have been released.

3

In *Stern v. FBI*, the D.C. Circuit held that there is a public interest in knowing the identities of government wrongdoers, separate and independent from other forms of public interest like ensuring the propriety of the government's investigation, "in order to hold the governors accountable to the governed." 737 F.2d 84, 92 (D.C. Cir. 1984) (ordering release of name of high-level employee found to have engaged in wrongdoing). DOJ's claim (Appellee Br. at 17-18) that *Stern* recognizes only a public interest in understanding the misconduct and the subsequent investigation, therefore, is incorrect. *Id.*; *see also Prison Legal News v. Samuels*, 787 F.3d 1142, 1150-51 (D.C. Cir. 2015) (recognizing public interest in names of "employees who repeatedly engage[d] in tortious or discriminatory conduct").

The Eleventh Circuit, citing First Circuit precedent, has also recognized public accountability and deterrence as valid forms of public interest supporting the disclosure of the names of government wrongdoers. *Cochran v. United States,* 770 F.2d 949, 956, 956 n.9 (11th Cir. 1985) (citing *Columbia Packing Co. v. U.S. Dep't of Agric.*, 563 F.2d 495, 499 (1st Cir. 1977)). In fact, it described release of the name of a high-ranking government official involved in wrongdoing as "crucial" to the public interest. *Id.* at 956 n.9. And it did so even when the misappropriation of government resources (having government employees repair an item of personal property and using a government aircraft for a personal trip) was, in the court's view, "relatively small." *Id.* at 952 n.2, 956-67.

4

Neither of this Court's decisions on which DOJ relies counsel otherwise or support DOJ's position. *See* Appellee Br. at 18-19. In *Associated Press v. Department of Defense*, the names at issue were not government officials, but Guantanamo detainees, so the case is inapplicable. 554 F.3d 274, 288-89 (2d Cir. 2009). In fact, this Court even noted in *Associated Press* that the relevant public interest is whether the information reveals something "about the character of a government agency ***or official***." *Id.* (emphasis added, quoting *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 88 (2d Cir. 1991)). Violations of department sexual harassment policies reveal a lot about the character of the offending official, including his willingness to jeopardize his office's "ability to execute its mission" through deliberate acts of sexual harassment that no reasonable government official could possibly have considered appropriate. Lee J. Lofthus, U.S. Dep't of Justice, Memo. for Heads of Dep't Components Re: Sexual Harassment and Sexual Misconduct (April 30, 2018) ("Lofthus Memo."), at 3, https://www.justice.gov/jmd/page/file/1059401/download. And DOJ's other case, *Behar v. DHS*, held that there is no FOIA public interest in understanding the operations of a Presidential campaign or transition, which, unlike the DOJ official here, had no connection to the agency who was the subject of the request. 39 F.4th 81, 92 (2d Cir. 2022).

5

Under precedent from this Court and others, there is a substantial public interest in the name of the DOJ executive found by the Inspector General to have sexually harassed multiple women in the workplace in violation of department policies.

C.  **It is not an unwarranted invasion of personal privacy to disclose the name of a high-level official found by an inspector general to have sexually harassed multiple women in violation of department policies.**

Because there is a substantial public interest, the Court must weigh it against the offending official's privacy interests to determine whether the invasion of privacy is "unwarranted." 5 U.S.C. § 552(b)(7)(C). DOJ claims that BuzzFeed would have this Court hold that "whenever a supervisory government official engages in any work-related misconduct, his identity necessarily must be disclosed." Appellee Br. at 25. That is not quite so: BuzzFeed argued, in the alternative, that even if the Court disagrees with some of BuzzFeed's *Perlman* arguments, disclosure of the names of high-level officials is warranted when they are found to have engaged in more than "minor infractions unrelated to their job duties" because the *Perlman* factors on the whole still point that way. Appellant Br. at 8. But because DOJ has not shown that workplace sexual harassment in violation of department policies is anything less than "serious" or that disclosing the name of the harasser does not serve an important public interest, the Court need not reach that broad of a question. Instead, it need only answer whether it is an unwarranted invasion of

6

personal privacy to disclose the name of a high-level official found by an inspector general to have sexually harassed multiple women in violation of department policies, and the answer to that question is "no."

That answer is consistent with case law, and would not "short-circuit the *Perlman* inquiry," Appellee Br. at 25, which, as discussed below, supports disclosure anyway. *Cochran* involved a relatively small misuse of public resources by a Major General of the United States Army. 770 F.2d at 956. *Stern* required disclosure of the name of an FBI Special Agent in Charge who withheld information from the GAO in an audit of FBI activities, but not low-level employees engaged only in negligence. 737 F.2d at 94. Both cases, like this one, involved high-level officials found to have engaged in sufficiently serious, intentional job-related misconduct, and held that their names must be released.

While DOJ argues that *Beck* later limited *Stern* to apply only when there has been "a well-publicized scandal," Appellee Br. at 25-26, what it actually held was that "the public interest identified in *Stern* was based on the widespread knowledge that certain FBI employees had been censured for their participation in a notorious criminal investigation. Here, by contrast, there is no evidence, let alone any public knowledge, that wrongdoing has occurred." *Beck v. DOJ*, 997 F.2d 1489, 1494 (D.C. Cir. 1993). This simply reinforces that disclosure of the name of the harasser here is appropriate: unlike in *Beck*, the Inspector General found that sexual

7

harassment and other violations of DOJ policy occurred, and released to the public a report stating those findings. And even if DOJ were correct that *Stern* is limited to a "scandal," *see* Appellee Br. at 26, something *Beck* does not define, 997 F.2d at 1493-94, sexual harassment by a high-level official of an agency that strives to "be a leader in maintaining a model workplace" sufficiently qualifies. Rod J. Rosenstein, U.S. Dep't of Justice, Memo. for Heads of Dep't Components Re: Sexual Harassment and Sexual Misconduct (April 30, 2018), at 1, https://www.justice.gov/jmd/page/file/1059401/download; *see also generally* Anna Brown, Pew Research Center, More Than Twice as Many Americans Support Than Oppose the #MeToo Movement (Sept. 29, 2022), https://www.pewresearch.org/social-trends/2022/09/29/more-than-twice-as-many-americans-support-than-oppose-the-metoo-movement/.

DOJ also relies on *American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016). Appellee Br. at 26-27. Far from supporting DOJ, that case acknowledged a public interest in the names of immigration judges who were the subject of complaints, rejected a blanket Exemption 6 withholding of all such names, and noted that the name of an official "subject to numerous and/or serious substantiated complaints might shed considerable light on matters of public interest." *Am. Immigr. Lawyers Ass'n*, 830 F.3d at 675. The official here was the subject of substantiated complaints of multiple

8

acts of sexual harassment in the workplace, including even in the course of a victim's interview for a promotion. JA-031-33. Thus, *American Immigration Lawyers Association* supports disclosure.

Because the invasion of privacy suffered by a high-ranking official found by an inspector general to have sexually harassed multiple women in violation of department policies is not unwarranted, Exemption 7(C) does not permit DOJ to keep secret the name of its offending executive.

### D. No *Perlman* factor supports withholding.

The *Perlman* factors further confirm that releasing the name of this high-ranking DOJ official found by the Inspector General to have violated department sexual harassment and other policies is warranted. All of the factors support release, and at best under DOJ's arguments, some are neutral; none support withholding.

#### 1. The government employee's rank is high.

The official was "a member of the DOJ's Senior Executive Service and was the senior most person in his office." *See* Appellee Br. at 8. DOJ does not even argue this factor supports its position. *See id.* at 19-27. While DOJ makes a passing and undeveloped reference to the official's subsequent retirement (and avoidance of any discipline) as increasing his privacy interests, Appellee Br. at 14, that argument ignores that *Perlman* itself involved a former official and found that this factor supported disclosure. *Perlman v. DOJ*, 312 F.3d 100, 107 (2d Cir. 2002), *vacated*

9

*by* 541 U.S. 970 (2004), *reaff'd on remand*, 380 F.3d 110 (2d Cir. 2004) (per curiam).

### 2. The degree of wrongdoing and strength of evidence against the employee are both high.

DOJ does not dispute that the strength of evidence against the employee is high, nor could it: the wrongdoing was the subject of findings by the Inspector General. *See* Appellee Br. at 20-22. Instead, DOJ argues that violations of department sexual harassment policies do not "rise to the level of misconduct" found in other cases. Appellee Br. at 21 (quoting district court, JA-100). That argument is wrong for several reasons.

First, none of the three cases DOJ cites purport to set the specific facts before them as a floor for what constitutes significantly serious misconduct. *See Perlman*, 312 F.3d 100; *Stern*, 737 F.2d 84; *BuzzFeed, Inc. v. DOJ*, No. 17 Civ. 7949 (VSB), 2019 WL 13084378 (S.D.N.Y. May 8, 2019).

Second, *Perlman* requires only that the wrongdoing be "a serious offense," and notes that *Stern* distinguished deliberately withholding information during an audit with "inadvertence and negligence." 312 F.3d at 107; *see also Stern*, 737 F.2d at 92-94 (nature of misconduct supports disclosure when it is "intolerable"). DOJ itself considers incidents of sexual harassment to be "of serious gravity" and to "have a significant negative impact on the Department's ability to execute its mission," and

10

subjects them to a policy of "zero tolerance," making clear that sexual harassment is a "serious offense" and "intolerable." JA-022; Lofthus Memo. at 3.

Finally, DOJ interprets these cases as requiring that the "improper behavior affected the administration of federal law or any government program." Appellee Br. at 22. But the misconduct in *Perlman* only "***may*** have allowed aliens to improperly come to the United States," 312 F.2d at 107 (emphasis added), and DOJ provides no reason to treat the public interest materially differently based on whether the risked harm to an agency's ability to execute its mission comes to fruition. The risk alone should be deterred and held to public account, and a government official contemplating sexual harassment or other acts that put an agency's mission at risk should not be encouraged to speculate about what will ultimately result from the wrongdoing being entertained. Thus, this factor supports disclosure.

### 3. There is no other way to obtain the information.

DOJ does not dispute that this factor supports disclosure. *See* Appellee Br. at 19-27.

### 4. The information sheds light on a government activity, is related to job function, and is not of a personal nature.

The Court should reject DOJ's claim that workplace sexual harassment is not related to a job function and that the name of the offending official does not shed light on government activity.

11

The offending official's responsibilities "involved overseeing an office that provides administrative, financial, technical, and other types of support to the mission of one of the Department's components, such as procurement, information technology management, human resources, budget, finance, facility services, the insider threat program, the continuity of operations program, and security." JA-053-54. "Overseeing" an office obviously involves managing it and its staff, and the official's responsibilities certainly included the debriefing during which he kissed a subordinate without her consent, the in-office meetings (plural) in which he commented on a subordinate's body shape and his preference for women with long hair, and the job interview in which he referenced gender in questioning an applicant's ability to do the job. JA-19, 031-33. Thus, the wrongdoing was related to a job function.

Releasing the executive's name also sheds light on government activity. As discussed above in the context of public interest generally, there is a well-recognized public interest related to government activity in releasing the names of wrongdoing government officials. *E.g. Am. Immigr. Lawyers Ass'n*, 830 F.3d at 675. And while DOJ relies on *Wood v. FBI*, *see* Appellee Br. at 23, that case involved the names of low-level employees who conducted a government investigation in which the names of decision-makers had been disclosed, not the name of a high-ranking official who engaged in misconduct. 432 F.3d 78, 88 (2d Cir. 2005). This Court even noted in

*Wood* that redacting the names of higher level officials would have been improper. *Id.* at 82 n.1. Thus, *Wood* supports disclosure, not withholding.

### E. The case should not be remanded for an Exemption 6 analysis.

Finally, DOJ argues in a footnote that if the Court agrees with BuzzFeed, the case should be remanded for an Exemption 6 analysis, which the District Court did not conduct. Appellee Br. at 27 n.5. But it is well-established that Exemptions 6 and 7(C) involve the same basic privacy versus public interest analysis, but with the burden under Exemption 7(C) being easier for the government, so there is no need for a separate Exemption 6 analysis that the government would necessarily lose if it does not prevail under Exemption 7(C). *Perlman*, 312 F.3d at 106 ("Because both exemptions are implicated here, we apply the stricter 7(C) evaluation of privacy interests."). Nor does DOJ even identify any "additional arguments" specific to Exemption 6 to be considered on remand, let alone show that they were made below and not forfeited. Appellee Br. at 27 n.5 Therefore, if the Court agrees that DOJ did not meet its Exemption 7(C) burden, the decision below should be reversed and remanded with instructions to order the information released and to permit BuzzFeed to petition for fees and costs.

13

## II. CONCLUSION

The Court should reverse the District Court and remand with instructions to release of the name of the DOJ executive found by the Inspector General to have sexually harassed multiple women in violation of department policies and to permit a petition for prevailing party attorney fees and costs under FOIA.

Dated: March 10, 2023

Respectfully Submitted,

*/s/ Matthew V. Topic*
Matthew Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
matt@loevy.com

*Counsel of Record for Appellant*

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,180 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

*/s/ Matthew Topic*
Matthew Topic

*Counsel for Appellant BuzzFeed, Inc.*

Dated: March 10, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Appellant's Reply Brief, with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on March 10, 2023.

All counsel of record in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Matthew Topic*
Matthew Topic

*Counsel for Appellant BuzzFeed, Inc.*

Dated: March 10, 2023